IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

**EMBRY JAY LOFTIS,**

    **Plaintiff,**

v.

**CODY CONWAY,**

    **Defendant.**

Case No. 24-CV-136-RAW-JAR

## OPINION AND ORDER

This civil rights action, brought pursuant to 42 U.S.C. § 1983, is before the court on Defendant Cody Conway's ("Defendant") Special Appearance and Motion to Dismiss ("Motion") [Dkt. No. 20]. The court has before it for consideration Plaintiff Embry Jay Loftis' ("Plaintiff") Complaint [Dkt. No. 1], Defendant's Motion [Dkt. No. 20], Plaintiff's Response [Dkt. No. 26] and Defendant's Reply [Dkt. No. 27].

At the time of filing his Complaint, Plaintiff was a *pro se* pretrial detainee incarcerated at the Carter County Detention Center in Ardmore, Oklahoma. Dkt. No. 1 at 2.[1] He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations occurring during an April 19, 2023, disturbance at his residence and subsequent arrest. The Defendant is a Chickasaw Lighthouse Police Officer.[2]

---

[1] The Court's citations refer to the CM/ECF header pagination.

[2] As an initial matter, neither party fully analyzes whether Defendant, a federal tribal officer, can be subject to this litigation. Defendant remarks in a footnote that "the question of sovereign immunity is not reached because the actions at issue were initiated by Ardmore Police Department dispatch and taken under a cross deputization agreement and pursuant to powers granted under Okla. Stat. tit. 21 § 99a(D)." Dkt. No. 27 at 1 n.3. Plaintiff alleged Defendant "act[ed] under the authority of his employ, pursuant to a cross deputization agreement[.]" Dkt. No. 1 at 28. Plaintiff also alleged Defendant was responding to an "Ardmore dispatch … disturbance with weapons call[.]" *Id.* at 22. The court concludes, under the circumstances alleged, Defendant is characterized

I.    **Background**[3]

Plaintiff alleges on or about the evening of April 19, 2023, Defendant responded to a call, on behalf of the Ardmore Police Department, at Plaintiff's property.[4] Dkt. No. 1 at 5, 22. Defendant was responding initially to a "disturbance with weapons" call which was escalated to a "shots fired" call while Defendant was en route. *Id.* at 10, 11, 22, 23.

Upon arrival, individuals advised Defendant a male in the white shirt tried to shoot them. *Id.* at 24-27. Defendant approached the man in a white shirt near a blue car. *Id.* at 10, 24. "[W]ithout probable cause, provocation or justification" or a "warning," Defendant deployed a pepperball gun twice, rendering Plaintiff unconscious. *Id.* at 5, 9, 10. Defendant struck Plaintiff's shoulder and face. *Id.* Plaintiff was subsequently taken into custody for public intoxication, and a weapon was not recovered from Plaintiff's person. *Id.* at 12, 13, 17. Plaintiff alleges the side effects of the pepperball rounds caused him to be unsteady and Defendant had no grounds to arrest him for public intoxication. *See id.* at 5, 10-12. Plaintiff also alleges Defendant tampered with witness statements to link, and ultimately arrest, Plaintiff to the crime of pointing a gun when in fact an individual in a red shirt was the responsible party. *See id.* at 6, 22-28. Upon booking into

---

as a "state actor" for purposes of this suit. *Loya v. Gutierrez,* 350 P.3d 1155, 1157 (N.M. 2015) ("Native–American actors may be subject to a Section 1983 claim if their actions are taken pursuant to state authority. 'If an individual is possessed of state authority and purports to act under that authority, his action is state action.'" (quoting *Williams v. Bd. of Cnty. Comm'rs,* 963 P.2d 522, 527 (N.M. 1998)).

[3] Plaintiff's Complaint is eighty-three (83) pages. *See* Dkt. Nos. 1, 1-1 and 1-2. The court summarizes Plaintiff's factual allegations which are critical to the court's analysis.

[4] Throughout his Complaint, Plaintiff alleges Defendant did not have authority, as a Chickasaw Lighthorse Officer, to respond to the call on non-native land or arrest Plaintiff, a non-Indian. *See, e.g.,* Dkt. No. 1 at 9. Plaintiff alleges Defendant was acting pursuant to a cross-deputization agreement. *Id.* at 22. Pursuant to Okla. Stat. tit. 21, § 99a(A), the court concludes Defendant had authority to respond to the Ardmore Police Department's dispatch call and arrest Plaintiff.

the Carter County Detention Center, illegal drugs were found on Plaintiff's person. *Id.* at 14. Plaintiff contends these drugs were planted by Defendant. *Id.* at 6.

As a result of the April 19, 2023, encounter, Plaintiff was originally charged in the District Court of Carter County, Case No. CF-2023-144 with two felonies: feloniously pointing a firearm and trafficking in illegal drugs. *Id.* at 13; *see also Oklahoma v. Loftis,* No. CF-2023-144, (Carter Cnty. Dist. Ct.).[5] The trafficking in illegal drugs charge was dismissed at the preliminary hearing, and Plaintiff was further charged with felon in possession of a firearm. Dkt. No. 1 at 20; Dkt. No. 1-2 at 22-23; *see also* Bind Over Information, *Loftis,* No. CF-2023-144 (Carter Cnty. Dist. Ct. Jan. 18, 2024). In the District Court of Carter County, Case No. CM-2023-285, Plaintiff was charged with three misdemeanors: obstructing an officer, public intoxication and unlawful possession of CDS-Hydrocodone. Dkt. No. 1 at 13; *see also Oklahoma v. Loftis,* No. CM-2023-285, (Carter Cnty. Dist. Ct.). Concerning the misdemeanor case, the obstructing an officer charge was dismissed, and Plaintiff pled guilty to public intoxication and unlawful possession of CDS-Hydrocodone. Court Minute, *Loftis,* No. CM-2023-285 (Carter Cnty. Dist. Ct. April 17, 2024). .

Plaintiff alleges Defendant violated Plaintiff's constitutional rights on April 19, 2023. *See* Dkt. No. 1. Plaintiff contends Defendant committed the following constitutional violations: 1) Defendant utilized excessive force by deploying his pepperball gun; 2) Defendant falsely arrested Plaintiff for public intoxication; 3) Defendant maliciously prosecuted Plaintiff by planting drugs on Plaintiff; and 4) Defendant falsely arrested and maliciously prosecuted Plaintiff by submitting a probable cause affidavit which relied upon false and/or tampered witness statements thereby

---

[5] The court may consider matters of public record, such as records from Plaintiff's Carter County criminal cases (CF-2023-144 and CM-2023-285), by taking judicial notice of such documents, without converting the motion to dismiss into a motion for summary judgment. *Tal v. Hogan,* 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

resulting in the wrong individual being arrested. Dkt. No. 1 at 5-28. Plaintiff also asserts a state law claim for intentional infliction of emotional distress. *Id.* at 7, 23.

Defendant responded to the Complaint by filing a Special Appearance and Motion to Dismiss. Dkt. No. 20. Defendant argues Plaintiff has failed to state a claim upon which relief can be granted. *Id.* at 1. Specifically, Defendant contends he possessed probable cause to arrest Plaintiff, his use of force was reasonable, he is entitled to qualified immunity, and Plaintiff's claims are precluded by the doctrine of judicial estoppel. *See id.* at 4-9. Defendant also argues Plaintiff's allegations do not amount to a cognizable claim for intentional infliction of emotional distress. *See id.* at 9-10. Accordingly, Defendant's position is that Plaintiff's entire Complaint must be dismissed.

## II.     Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should be dismissed for failure to state a claim upon which relief can be granted "only when it appears that the plaintiff can prove no set of facts in support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (internal quotations and citations omitted).

A request for dismissal pursuant to Rule 12(b)(6) requires the court to determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court is required to exercise a liberal interpretation of Plaintiff's pleadings, *Haines v. Kerner*, 404 U.S. 520-21 (1972), the court need not assume the role of advocate for Plaintiff, and he must present more than conclusory allegations to survive a motion to dismiss for failure to state a claim, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id.* (citing cases). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

### III. Precluded Claims

The court agrees with Defendant that some of Plaintiff's claims are barred. Plaintiff's claims for false arrest and malicious prosecution require Plaintiff to demonstrate Defendant did not have probable cause. *See, e.g.*, *Smith v. Barber*, 316 F. Supp.2d 992, 1021 (D. Kan. 2004) ("A false arrest claim will fail where probable cause exists for at least one of the charges against a plaintiff in a § 1983 case."); *see also Montoya v. Vigil,* 898 F.3d 1056, 1066 (10th Cir. 2018) (explaining that a claim for malicious prosecution requires a showing that "no probable cause supported the original arrest, continued confinement or prosecution"). Based upon the record of the state court proceedings, of which the court appropriately takes judicial notice, the court concludes a number of Plaintiff's claims cannot proceed.

#### A. Claim 2: False Arrest for Public Intoxication

Plaintiff alleges, "Defendant Conway's arrest of Plaintiff for public intoxication was neither supported by a reasonable belief, nor probable cause, and thus constitutes a false arrest, in

violation of Plaintiff Loftis' constitutional rights[.]" Dkt. No. 1 at 5. Specifically, Plaintiff contends he was knocked unconscious by the pepperball rounds, and it was impossible for Defendant to smell the odor of alcohol on Plaintiff since he was wearing a mask and pepper spray was disbursed. *See id.* at 11-12. Further, Plaintiff alleges there is not any information in Defendant's affidavit which suggests he observed Plaintiff behave in an intoxicated manner prior to the use of pepperball rounds. *Id.* at 10. Plaintiff concludes these alleged facts prove Defendant falsely arrested Plaintiff for public intoxication. *Id.* at 5, 11-12. Defendant responds he possessed probable cause to justify the arrest, and Plaintiff should be judicially estopped from raising a false arrest claim since he pled guilty to the public intoxication charge. Dkt. No. 20 at 4-6, 7-9. The court agrees Plaintiff's plea precludes the instant false arrest claim.

A claim for false arrest necessarily requires proof that the arresting officer lacked probable cause to make the arrest. *See, e.g.*, *Barber*, 316 F. Supp. 2d at 1021 ("A false arrest claim will fail where probable cause exists for at least one of the charges against a plaintiff in a § 1983 case."). The Tenth Circuit has held "a plea of nolo contendere to criminal charges, and the consequent adjudication of guilt thereon, estop the defendant from later disputing the validity of those charges as a basis to deny the existence of probable cause for his arrest." *Jackson v. Loftis,* 189 F. App'x 775, 779 (10th Cir. 2006) (unpublished).[6] "Plaintiff cannot now challenge the existence of probable cause for, and hence the validity of, his arrest on charges he conclusively admitted were valid." *Id.* at 779-80.; *see also Chammat v. Fallis,* Case No. 13-CV-206-JED, 2014 WL 916749, at * 2 (N.D. Okla. Mar. 10, 2014) (relying on *Jackson v. Loftis* to dismiss § 1983 plaintiff's false arrest claim based on *nolo contendere* plea); *Harper v. Woodward Cnty. Bd. of Cnty. Comm'rs,*

---

[6] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

No. 11-CV-996-HE, 2016 WL 4487704, at *4-*5 (W.D. Okla. May 17, 2016) (same).  In Oklahoma, a *nolo contendere* plea has the same legal effect as a guilty plea." *Jackson,* 189 F. App'x at 779 (quoting *Morgan v. State,* 744 P.2d 1280, 1281 (Okla. Crim. App. 1987)).  Plaintiff pled guilty to public intoxication.  *See* Court Minute, *Loftis,* No. CM-2023-285 (Carter Cnty. Dist. Ct. April 17, 2024); Nunc Pro Tunc Judgment and Sentence, *Loftis*, No. CM-2023-285 (Carter Cnty. Dist. Ct. May 3, 2024).  It follows, in accord with *Jackson,* Plaintiff's false arrest claim is barred.

Therefore, pursuant to *Jackson,* Plaintiff's Claim 2, false arrest for public intoxication, shall be dismissed.

### B.  Claim 3:  Malicious Prosecution of Unlawful Possession Charge

Plaintiff also alleges Defendant "willfully, maliciously, fraudulently, in bad faith and beyond his authority, in deliberate defiance of the law, planted drugs in Plaintiff's pocket with the intent to cause Plaintiff harm by causing Plaintiff to be charged with drug trafficking and possession of controlled dangerous substance, hydrocodone."  Dkt. No. 1 at 6.  Plaintiff alleges, after arresting Plaintiff, Defendant planted drugs on Plaintiff to charge Plaintiff with unlawful possession of a controlled dangerous substance.  *See* Dkt. No. 1 at 12-22.  Construing Plaintiff's allegations liberally, Plaintiff appears to be asserting a malicious prosecution claim as to the unlawful possession charge.

Defendant counters that a person and property in that person's immediate possession may be searched at the jail after an arrest occurred at a separate location, and evidence discovered during the search may be seized and admitted in evidence.  Dkt. No. 20 at 5 (citing *United States v. Edwards,* 415 U.S. 800, 803 (1974)).  Defendant also contends Plaintiff is estopped from challenging the public intoxication charge.  *Id.* at 7.  Notably, Plaintiff pled guilty to the charge of

unlawful possession of a controlled dangerous substance.  *See* Court Minute, *Loftis,* No. CM-2023-285 (Carter Cnty. Dist. Ct. April 17, 2024); Nunc Pro Tunc Judgment and Sentence, *Loftis*, No. CM-2023-285 (Carter Cnty. Dist. Ct. May 3, 2024).

To establish a malicious prosecution claim under § 1983, a plaintiff initially must show, among other elements, that no probable cause supported the original arrest, continued confinement, or prosecution.  *Montoya,* 898 F.3d at 1066.  Critical to the court's current analysis, "a guilty plea on an underlying charge establishes probable cause as a matter of law."  *Masetta v. Town of Irondequoit,* No. 06-CV-6143, 2010 WL 4823684, at *4 (W.D.N.Y. Nov. 29, 2010); *see also Kirkland v. O'Brien,* No. 12-CV-2083-WJM, 2013 WL 2147546, at *3 (D. Colo. May 16, 2013) (Plaintiff pled guilty to the underlying charge "and cannot now deny the existence of probable cause for the charge."); *Birch v. City of Atchison,* No. 19-CV-2156-JAR, 2020 WL 3034813, at *10 (D. Kan. June 5, 2020) (Plaintiff's conviction "conclusively establishes probable cause" and "Plaintiff can therefore show no constitutional violation.").

Given Plaintiff pled guilty to the charge of unlawful possession of a controlled substance, Plaintiff cannot establish the original prosecution lacked probable cause.   Plaintiff's Claim 3 must also be dismissed.

### C. Claim 4:  False Arrest and Malicious Prosecution Related to Feloniously Pointing a Firearm Charge

Plaintiff alleges,

> Defendant Conway's Affidavit for Probable Cause, accused Plaintiff of being the person who pointed a gun at Courtney Higginbotham, Cannisha Harper and Lea Stelding which was supported only by false statements made knowingly and with reckless disregard for the truth.  And was the basis of the charge in Count 1: Feloniously pointing a firearm, filed against Mr. Loftis in Case No. CF-2023-144[.]

Dkt. No. 1 at 6.  Plaintiff alleges there were two males present at the time of the disturbance, and Defendant "arrested the wrong person."  Dkt. No. 1 at 22.  At the time one witness was on the

8

phone with 911 dispatch, Defendant arrived at the scene and could observe the second male in the *red* shirt. *Id.* at 24. Therefore, Plaintiff contends, Defendant falsified his narrative and affidavit by stating the witnesses "stated that the guy in the *white* shirt by the blue car has a gun and tried to shoot them." Dkt. No. 1 at 26 (emphasis supplied). Plaintiff alleges Defendant manipulated the witnesses' statements in an "attempt to link Loftis to the scene of the crime, wherein the evidence proves he was not." *Id.* at 27. The court understands Plaintiff's theory to be that the individual with the *red* shirt possessed and fired the gun, Defendant was aware of this and manipulated his narrative, affidavit and witness statements to support Plaintiff's arrest and charge of feloniously pointing a firearm. The court interprets Plaintiff's allegations as a claim for false arrest and malicious prosecution as it relates to the firearm charge.[7] Defendant argues he possessed probable cause to arrest Plaintiff for pointing a firearm at multiple people. Dkt. No. 20 at 5. Defendant also states he is entitled to qualified immunity. *Id.* at 7.

As noted above, to succeed on either a claim for false arrest or malicious prosecution as it relates to the firearm charge, Plaintiff must demonstrate Defendant lacked probable cause. *Barber*, 316 F. Supp.2d at 1021; *see also Montoya,* 898 F.3d at 1066. Fatal to Plaintiff's claim is that a preliminary hearing was held and the State district court found probable cause existed to bind Plaintiff over for trial as to the feloniously pointing a firearm charge. Dkt. No. 1-2 at 23 (the State district court made "a finding of probable cause as to the felony of feloniously pointing a firearm."); *see also Loftis,* No. CF-2023-144 (Carter Cnty. Dist. Ct.). Critically, Plaintiff was

---

[7] The Tenth Circuit categorized a § 1983 action against a sheriff alleging the sheriff knowingly made false statements in an affidavit to procure an arrest warrant as Fourth Amendment violations of the right to be free from unreasonable seizures and the closest common law analogy was to the torts of false arrest and malicious prosecution. *Taylor v. Meacham,* 82 F.3d 1556, 1560-61 (10th Cir. 1996).

represented by counsel and Plaintiff's counsel had the opportunity to cross-examine the State's witnesses. *Id.* at 19, 20. Further, Defendant did not testify. *See id.*

The issue of probable cause as to the feloniously pointing a firearm charge was "actually and necessarily decided at Plaintiff's preliminary hearing" and "the issue was fully and fairly litigated during Plaintiff's preliminary hearing." *Smith v. Orscheln Farm & Home, L.L.C.*, No. 17-CV-294-JHP, 2018 WL 1570809, at *3 (E.D. Okla. Mar. 30, 2018). As a result, Plaintiff is precluded from relitigating now whether probable cause existed. *Id.* ("[T]he malicious prosecution claim is barred, because probable cause was found at Plaintiff's preliminary hearing."); *Cowdrey v. Allen,* No. 05-CV-461-TCK, 2006 WL 3241381, at *3 (N.D. Okla. Nov. 7, 2006) ("As a matter of law, [the state court's] finding of probable cause at the [] preliminary hearing negates Plaintiff's ability to meet the third element of her malicious prosecution claim, mandating dismissal of same."). The same analysis applies if the claim is construed as one for false arrest. *Orscheln Farm*, 2018 WL 1570809, at *4 (noting that "a false arrest claim is negated by a finding of probable cause"); *Adamson v. Dayton Hudson Corp.*, 774 P.2d 478, 479 (Okla. Civ. App. 1989) (explaining that "probable cause constitutes a complete defense to an action for false arrest"). Consequently, Plaintiff's Claim 4 must also be dismissed.

### IV.  Remaining Claims

Having disposed of Plaintiff's claims which are barred because of the underlying state court record, the court addresses Plaintiff's remaining claims: excessive force and intentional infliction of emotional distress.

#### A.  Claim 1:  Excessive Force

Plaintiff alleges Defendant used excessive force when he "without probable cause, provocation or justification, entered onto Plaintiff's a non-native citizens [sic.] private property

and shot Plaintiff twice with a pepperball gun, once in Plaintiff's left shoulder and once in the left side of the Plaintiff's face" in violation of the Fourth Amendment. Dkt. No. 1 at 5, 9. Plaintiff alleges he was shot without warning at "almost point blank range" and was "knocked []unconscious." *Id.* at 10. Plaintiff alleges this was "unreasonable force." *Id.* at 5. Plaintiff does allege "once on Plaintiff's premises defendant Conway had no authority to command Plaintiff to put his hands up or get on the ground[.]" *Id.* at 9. Plaintiff's allegations leave unanswered the exact sequence of events and whether Plaintiff complied.

Defendant contends his use of non-lethal force was objectively reasonable based on the facts and circumstances presented to him. Dkt. No. 20 at 6-7. Defendant relies on his own narrative and affidavit attached to Plaintiff's Complaint to support this position. *See id.* Defendant also claims he is entitled to qualified immunity. *Id.* at 7.

The court acknowledges the materials attached to Plaintiff's Complaint conflict with Plaintiff's allegations. *Compare* Dkt. No. 1 at 5, 9, *with* Dkt. No. 1-1 at 9-13. First, the court must determine the proper treatment of the exhibits attached to Plaintiff's Complaint, specifically Defendant's narrative and probable cause affidavit. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal quotation omitted). "Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010).

> There are exceptions to this restriction on what the court can consider, but they are quite limited: (1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice.

11

*Id.* (internal quotations and citations omitted).  Generally, "if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).  "*Importantly, however*, this rule typically applies only to a document that qualifies as a 'written instrument,' which is 'a legal document that defines rights, duties, entitlement, or liabilities, such as a statute, contract, will, promissory note, or share certificate.'" *Mundt v. Gadziala,* 2024 WL 5087212, at *5 (10th Cir. Dec. 12, 2024) (emphasis added) (quoting *Smith v. Hogan,* 794 F.3d 249, 254 (2d Cir. 2015)).

Here, neither Defendant's narrative nor probable cause affidavit constitute a written instrument for purposes of ruling on Defendant's motion to dismiss. *Mundt,* 2024 WL 5087212, at *5.  Thus, before treating the content of these documents as true, the court must "consider[] the nature of [the narrative and affidavit] and why the complaint referenced them." *Mundt,* 2024 WL 5087212, at *5.  A review of Plaintiff's allegations and the referenced documents reveals Plaintiff directly challenged the accuracy and veracity of Defendant's narrative and affidavit.  *See e.g.,* Dkt. No. 1 at 23 ("I've found that Officer Conway's Affidavit for Probable Cause does show several glaring omissions and at least (12) false and/or misleading statements").  Accordingly, the court will not credit the contents of the narrative and affidavit over the allegations in the complaint. *Mundt,* 2024 WL 5087212, at *5 (reversing district court's dismissal wherein district court credited the content of DHS caseworker's affidavit over the allegations in the complaint).[8]  For purposes

---

[8] *See also Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 168 (4th Cir. 2016) (concluding, in ruling on motion to dismiss, district court erred in accepting as true the factual statements in a police incident report, which the court should have treated as "a document prepared by [an officer] ... representing the [o]fficers' view of events, not a document representing the true facts"); *Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) ("[W]e treat the exhibit as an allegation that the officers made the statements in the transcript and we treat that allegation as true.... We do not accept as true, however, that [the officers' statements are] accurate or true"); *N. Ind. Gun &*

of analyzing Plaintiff's excessive force claim, the court will accept as true Plaintiff's allegations in the Complaint, not the exhibits attached to his Complaint. The court now turns to the merits of Defendant's argument in support of dismissal.

Qualified immunity "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Turner v. Okla. Cnty. Bd. of Cnty. Comm'rs.*, 804 F. App'x 921, 925 (10th Cir. 2020) (unpublished, citation omitted). "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). At the motion to dismiss stage, however, defendants are subject "to a more challenging standard of review than would apply" at the summary judgment stage. *Id.* (quoting *Peterson v. Jensen,* 371 F.3d 1199, 1201 (10th Cir. 2004)). "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996) (emphasis in original)). Further, "[b]ecause the reasonableness inquiry overlaps with the qualified immunity analysis, a qualified immunity defense [is] of less value when raised in defense of an excessive force claim." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir.2002) (quoting *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001)).

Accordingly, when a defendant raises a qualified immunity defense in a motion to dismiss, the court employs a two-part test to determine whether Plaintiff (1) plausibly pleaded that the defendant violated a constitutional right, and (2) shows that the constitutional right was clearly

---

*Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 455 (7th Cir.1998) (explaining that "Rule 10(c) does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact." Instead, before treating the contents as true, court should "consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents").

established at the time of the defendant's alleged misconduct. *Turner,* 804 F. App'x at 925. The court has discretion to decide which of the two prongs to address first, considering the circumstances of the case, and need not address both. *Id.*

### i. **Constitutional Violation**

To state a constitutional violation, Plaintiff must show that the force used – i.e. the use of the pepperball gun – was objectively unreasonable. *See Cavanaugh v. Woods Cross City,* 625 F.3d 661, 664-66 (10th Cir. 2010). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). In determining whether the use of force is reasonable in a particular situation, the court considers the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or evading arrest by flight. *Henry v. Storey,* 658 F.3d 1235, 1239 (10th Cir. 2011). "Whether an officer acted reasonably is 'heavily fact dependent.'" *Hall v. City of Muskogee,* No. 15-CV-060-RAW, 2015 WL 4651808, at *4 (E.D. Okla. Aug. 5, 2015) (quoting *Olsen,* 312 F.3d at 1314).

According to Plaintiff's allegations, Defendant arrived on the scene and deployed a pepperball gun without warning, cause or provocation at point blank range to Defendant's left shoulder and face, rendering him unconscious. Dkt. No. 1 at 5, 9-10. Plaintiff informed Defendant "he did not own a gun, and had cerently [sic.] not had been pointing any gun at somebody." *Id.* at 13. Plaintiff was temporarily blinded by the pepperball round, and his COPD and blood pressure conditions soared as a result. *Id.* Plaintiff was unarmed. *Id.* at 13, 14. There are no allegations that Plaintiff was actively resisting arrest or attempting to evade arrest. Plaintiff's allegations allude to the fact that Plaintiff may not have complied with verbal commands. *See* Dkt. No. 1 at

9. Plaintiff's allegations do not specifically reveal the threat perceived by Defendant. Plaintiff does allege Defendant was responding to a shots fired call. *Id.* at 10, 11, 22, 23. Plaintiff contests that the information available to Defendant indicated it was Plaintiff who was responsible for pointing and/or firing a gun. *Id.* at 22-27. The court acknowledges it is a close call. Given the procedural posture and construing Plaintiff's allegations generously, the court concludes Plaintiff has adequately stated a constitutional violation and satisfied the first prong of the qualified immunity analysis.

### ii. Clearly Established

Next, the court considers whether the constitutional right was clearly established as of April 19, 2023. "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (citation omitted). A law is not clearly established unless existing precedent has "placed the statutory or constitutional question beyond debate." *Id.* (citation omitted). This is an objective test. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Although the Supreme Court has emphasized that specificity is important when defining clearly established law for excessive force claims, *see Mullenix v. Luna,* 577 U.S. 7, 12 (2015), the Tenth Circuit has acknowledged that "there will almost never be a previously published opinion involving exactly the same circumstances" in an excessive force case given the "all-things-considered inquiry" that must be undertaken in each case. *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Myers,* 773 F. App'x at 1037 (quoting *Mullenix,* 577 U.S. at 12).

As alleged in the Complaint, the particular conduct at issue is Defendant's decision to shoot

Plaintiff with a pepperball gun in the face at point blank range without warning, provocation or justification. Defendant was unarmed and was allegedly not attempting to flee or resist arrest. The Tenth Circuit has made clear that using less lethal weapons, such as pepper ball guns, on subjects who do not pose an immediate threat to officers can constitute excessive force. In *Buck v. City of Albuquerque*, 549 F.3d 1269, 1291 (10th Cir. 2008), it was clearly established that the deployment of tear gas, pepper spray and non-lethal projectiles on protesters was an unreasonable use of force where "not one of the suspected crimes charged or uncharged was severe, neither posed a threat to the safety of an officer or others, and neither attempted to flee or evade arrest." In *Fogarty v. Gallegos*, the Tenth Circuit denied qualified immunity to the defendant officers and found that hitting a protestor with a less lethal projectile was an excessive use of force where the protestor was unarmed, did not attempt to evade arrest, and "presented no immediate threat to anyone's physical safety." 523 F.3d 1147, 1160-62 (10th Cir. 2008). A sister court recently relied upon *Buck* and *Fogarty* to conclude using a pepper-gel gun at close proximity directly into the face of a detainee located in a jail cell violated a clearly established right. *See Chapman v. Hedderman,* No. 20-CV-825-D, 2021 WL 2149322, at *5-6 (W.D. Okla. May 26, 2021).

The Tenth Circuit has also held it was clearly established that a police officer "could not use his Taser on a nonviolent misdemeanant who did not pose a threat and was not resisting or evading arrest without first giving a warning." *Cavanaugh,* 625 F.3d at 667; *see also Casey,* 509 F.3d at 1285 ("The absence of any warning—or of facts making clear that no warning was necessary—makes the circumstances of this case especially troubling"). Plaintiff alleges Defendant deployed two pepperball rounds, one to the face, at point blank range *without warning*, probable cause, provocation or justification. Dkt. No. 1 at 5, 10.

Although *Buck, Fogarty* and *Cavanaugh* are not perfectly analogous to the situation

16

presented here, it is not necessary for there to be a factually identical case. *See McCowan v. Morales*, 945 F.3d 1276, 1287 (10th Cir. 2019) (denying qualified immunity although there was not a "factually identical prior case"). As noted, "there will almost never be a previously published opinion involving exactly the same circumstances." *Casey*, 509 F.3d at 1284. Like the facts alleged in this case, *Buck*, *Fogarty* and *Cavanaugh* all involve the deployment of non-lethal projectiles against a person who, *as alleged*, did not pose an immediate threat.

Applying those cases to Plaintiff's allegations and for purposes of the instant Motion, the court concludes the constitutional violation alleged was clearly established. Accordingly, Defendant is not entitled to qualified immunity at this time. Plaintiff's allegations contain insufficient facts to find qualified immunity applicable. *Moquett v. Town of Rock Island,* No. 14-CV-531-RAW*,* 2015 WL 3952276, at *3 (E.D. Okla. June 29, 2015); *see also King v. Hill,* 615 F. App'x 470, 477 (10th Cir. 2015) (explaining that "the reasonableness inquiry in an excessive-force case is fact-specific"). Defendant may renew his argument later. "[T]he denial of qualified immunity protection at the motion to dismiss stage does not bind the court at the summary judgment stage." *Stonecipher v. Valles*, 759 F.3d 1134, 1148 n. 9 (10th Cir. 2014). For these reasons, Plaintiff's excessive force claim is not subject to dismissal.

### B. <u>Claim 5: Intentional Infliction of Emotional Distress</u>

Finally, Plaintiff asserts a state law claim for intentional infliction of emotional distress ("IIED"). Plaintiff alleges Defendant's "actions in this matter leading to his charge for feloniously pointing a firearm, was designed by [Defendant] alone, to cause Plaintiff intentional infliction of emotional distress." Dkt. No. 1 at 23. Plaintiff further alleges Defendant's "conduct in this case was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in civilized community.'" *Id.*

Defendant responds Plaintiff has failed to allege facts which can be considered "beyond all possible bounds of decency" or "utterly intolerable in a civilized community." Dkt. No. 20 at 9. Instead, Defendant contends Plaintiff alleges "the expected difficulties experienced that follow a lawful arrest." *Id.*

Under Oklahoma law, "intentional infliction of emotional distress is an independent tort," *Kraszewski v. Baptist Med. Ctr. of Okla., Inc.*, 916 P.2d 241, 248 (Okla. 1996). This tort is governed by "narrow standards" that permit recovery only for "extreme and outrageous conduct coupled with severe emotional stress." *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). To prevail, a plaintiff must establish that the defendant "intentionally or recklessly" engaged in "extreme and outrageous" conduct that caused the plaintiff to suffer "severe" emotional distress. *Id.* "The trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress" in an effort to "ensure[] that only valid claims reach the jury under the appropriate legal standards." *Id.*

Here, Plaintiff has not alleged he experienced emotional distress that was so severe no reasonable person could be expected to endure it. *See id.* at 736. Plaintiff's Complaint does not inform the court or Defendant what emotional distress he suffered, if any. Plaintiff's Complaint merely contains conclusory allegations of emotional distress. *Hall*, 925 F.2d at 1110 (explaining that "conclusory allegations without supporting factual averments are insufficient to state a claim"). Accordingly, the court will dismiss Plaintiff's intentional infliction of emotional distress claim for failure to state a claim upon which relief can be granted.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.** Specifically,

1. Plaintiff's claims for false arrest for public intoxication (Claim 2), malicious prosecution as it relates to Plaintiff's drug charges (Claim 3), false arrest and malicious prosecution as it relates to Plaintiff's feloniously pointing a firearm charge (Claim 4) and intentional infliction of emotional distress (Claim 5) shall be **DISMISSED WITHOUT PREJUDICE**; and

2. Plaintiff's claim for excessive force (Claim 1) shall proceed.

Dated this 3rd day of March, 2025.

**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**