**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **EMBRY JAY LOFTIS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CODY CONWAY,**<br><br>**Defendant.** | **Case No. 24-CV-136-RAW-JAR** |

## OPINION AND ORDER

This civil rights action, brought pursuant to 42 U.S.C. § 1983, is before the court on Defendant Cody Conway's ("Conway") Motion for Summary Judgment ("Motion"). Dkt. 45. The court has before it for consideration Conway's Motion (Dkt. 45), Plaintiff Embry Jay Loftis's ("Loftis") Response to Defendant's Motion for Summary Judgment and Brief in Support (Dkt. 51), Conway's Reply in support of the Motion (Dkt. 53), Loftis's Sur-Reply (Dkt. 56) and Conway's Sur-Response (Dkt. 57).

The court previously granted in part and denied in part Conway's Motion to Dismiss. Dkts. 20 and 29. The court dismissed Loftis's claims for false arrest for public intoxication, malicious prosecution as it related to Loftis's drug charges, false arrest and malicious prosecution as it related to Loftis's feloniously pointing a firearm and intentional infliction of emotional distress. *See* Dkt. 29. The court permitted Loftis's excessive force claim to proceed. *Id.* Accordingly, the only remaining claim before the court is Loftis's claim that Conway utilized excessive force, by deploying pepperball rounds against Loftis, while effectuating the arrest of Loftis. Dkt. 1 at 5, 9.[1] Conway now moves for summary judgment on the remaining claim. Dkt. 45.

---

[1] The court's citations refer to the CM/ECF header pagination.

## ANALYSIS

### I. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must "'view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party.'" *Cronick v. Pryor*, 99 F.4th 1262, 1267 (10th Cir. 2024) (quoting *Simpson v. Little*, 16 F.4th 1353, 1360 (10th Cir. 2021)). "If the movant carries the burden of demonstrating an absence of a dispute as to material fact, 'the nonmovant must then go beyond the pleadings and set forth specific facts that would be admissible in evidence and that show a genuine issue for trial.'" *Davis v. GEO Grp. Corr., Inc.*, No. CIV-16-462-PRW, 2023 WL 2861425, at *2 (W.D. Okla. Jan. 12, 2023) (unpublished)[2] (quoting *Martin v. City of Okla. City*, 180 F. Supp. 3d 978, 983 (W.D. Okla. 2016)). To satisfy this obligation, Loftis cannot rest on mere arguments or allegations; instead, he must identify the facts that create a genuine dispute by referring to affidavits, depositions, or specific exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

### II. Undisputed Facts

The following facts are supported by the evidence and are construed in a light most favorable to Loftis: On April 19, 2023, at approximately 5:41 p.m., Courtney Higginbotham called

[2] The court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

the Ardmore Police via 911 to report there were two black males on her street pointing a gun at people. Dkt. 45-1 at 3; Dkt. 51-1. One male had a white shirt on, and another male had a red shirt on. Dkt. 45-1 at 3; Dkt. 51-1. Higginbotham advised she was located at 1410 7th Avenue NE. Dkt. 45-1 at 3. Chickasaw Nation Lighthorse Police Officer Cody Conway was the closest officer to the call. Dkt. 45-2 at 1. Therefore, Conway responded to the call, originally characterized as a "disturbance with weapons." *Id.* While en route to the scene, Conway was informed the suspect had fired a shot. *Id.* Higginbotham told the dispatcher the man in the white shirt was firing at her. Dkt. 45-1 at 4. Conway understood the incident to be a "shooting in progress." Dkt. 45-2 at 1.

When he turned onto 7th Avenue, multiple individuals in the front yard of 1410 7th Avenue NE advised Conway the suspect was down the street. Dkt. 45-5 at 3:23-3:34. Conway proceeded down the street in his vehicle and observed a man in a white shirt near a blue car parked in a driveway. Dkt. 45-2 at 1; Dkt. 51 at 1. Conway exited the vehicle with his weapon drawn and commanded, "Everyone put your hands up!" Dkt. 45-5 at 3:43-3:52; Dkt. 45-2 at 1. Loftis did not comply with Conway's instructions. Dkt. 51 at 2. Instead, Loftis "refused to comply and yelled profanities and instead kept his hand [sic.] down by his sides[.]" *Id.*; *see also* Dkt. 45-2 at 1 ("I exited my patrol car and held the subject at gunpoint and gave him commands to put his hands up and get on the ground. The subject immediately shouted, 'fuck you'. I again told the subject to get on the ground and he did not. The subject continued to keep his hands near his waistband while yelling profanities.").

Conway also observed two black males, one in a red shirt and one in a gray shirt, behind the house. Dkt. 45-2 at 1. Conway commanded them to put their hands up and walk out. *Id.* These individuals also ignored commands and walked out of Conway's sight. *Id.*; *see also* Dkt. 51 at 2. Within approximately 25 seconds of Conway being on the scene, and without warning,

Conway deployed the first pepper cartridge shot. Dkt. 45-5 at 4:09.[3] He immediately fired a second shot. *Id.* at 4:10. The first shot struck Loftis's shoulder, and the second shot struck Loftis's face. Dkt. 45-2 at 1. After being struck with the pepper cartridges, Loftis went to his knees and then to the ground. *Id.* at 1-2. At this point, Conway was able to take Loftis into custody. *Id.* at 2. A firearm was not recovered from Loftis's person. *Id.* Nevertheless, Loftis was charged with the felony of feloniously pointing a firearm, and the state district court concluded after the preliminary hearing that there was probable cause to support this charged offense. Dkt. 45-7 at 29-30.

## III. Excessive Force Claim

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendments, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021). Claims arising during an investigatory stop or arrest arise under the Fourth Amendment. *Id.* Accordingly, the court will analyze Loftis's excessive force claim under the Fourth Amendment.

Furthermore, Conway has raised the qualified immunity defense. Dkt. 45 at 6. "When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test." *Nelson v. McMullen,* 207 F.3d 1202, 1206 (10th Cir. 2000). "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id.*

---

[3] Loftis contends Conway deployed the JPX pepper cartridge without warning Loftis. Dkt. 51 at 7. The only audio from the event is Conway's dashcam video and no warning can be deciphered by the court. Dkt. 51-1 at 3:43-4:10. Construing the facts in Loftis's favor, the court concludes Conway did not warn Loftis before deploying the JPX pepper cartridges.

(internal quotation marks omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment." *Id.* (internal quotation marks omitted). The court "may decide which of these two prongs to address first and, need not address both." *Estate of Redd ex rel. Redd v. Love*, 848 F.3d 899, 906 (10th Cir. 2017). Here, the court opts to first analyze whether Conway's actions violated a constitutional or statutory right.

**A. Whether Conway violated Loftis's Fourth Amendment rights by use of excessive force**

To prevail on his excessive force claim, Loftis must show that Conway's actions were objectively unreasonable. *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010). The court must determine "whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citations omitted).

The court considers three nonexclusive factors when assessing the reasonableness of an officer's use of force: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 590 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)). A "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Thus, the reasonableness of "a particular use of force" must be assessed from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)); *see also Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015) ("The belief need not be correct—in retrospect the

force may seem unnecessary—as long as it is reasonable."). A reviewing court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020) (citation omitted).

With respect to the first *Graham* factor, felonies or crimes involving violent conduct are considered severe. *Vette*, 989 F.3d at 1170 ("[B]inding precedent indicates the first *Graham* factor weighs against the plaintiff when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent."); *Ibarra v. Lee*, No. 22-5094, 2023 WL 6939236, at *10 (10th Cir. Oct. 20, 2023) (unpublished) ("A felony or violent conduct justifies more force."). Here, Conway was responding to a "priority 1" call involving "shots fired." Dkt. 45-4 at 1. A priority 1 call "is the most serious threat level because there is the potential for an active shooter incident, severe injury or death." *Id.* The original call advised of "male subject … in the street and was pointing a handgun at the reporting party." Dkt. 45-2 at 1. While en route to the scene, Conway was advised "the suspect had fired a shot" and Conway was advised "it was a shooting in progress." *Id.* Furthermore, Loftis was ultimately charged with the felony of feloniously pointing a firearm and the state district court found there was probable cause to support this charge. Dkt. 45-7 at 29-30.

Therefore, Conway was ultimately responding to a felony crime which involved an armed suspect actively firing shots. Dkt. 45-3 at 6.[4] The first *Graham* factor weighs in favor of Conway's use of force.

As to the second *Graham* factor, the court "must consider the level of threat posed *at the precise time* the officer used increased force." *Walker v. Anderson*, Case No. 23-CV-008-CVE,

---

[4] Throughout his briefing, Loftis challenges Conway's version of events. *See* Dkt. 51 at 3-6. However, the court must assess the facts from "the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396.

2024 WL 3905733, at *7 (N.D. Okla. Aug. 22, 2024) (unpublished) (citing *Vette*, 989 F.3d at 1171). "The Tenth Circuit has also considered factors such as whether the suspect is intoxicated and the nature of the crime officers are investigating." *Walker*, 2024 WL 3905733, at *7 (citing *Huntley v. City of Owasso*, 497 F. App'x 826, 830 (10th Cir. 2012) and *Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007)). Furthermore, "an officer may use increased force when a suspect is armed, repeatedly ignores police commands, or makes hostile motions towards the officer or others." *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020).

As noted, when Conway arrived on the scene he was responding to a "shots fired" call.[5] The victim, Courtney Higginbotham, informed the 911 dispatcher the suspects were "2 black males pointing a gun at people: white shirt and his son has a red shirt." Dkt. 45-1 at 3. Higginbotham then informed the 911 dispatcher that "white shirt is firing at [reporting party]." *Id.* at 4. When Conway turned onto 7th Avenue, multiple subjects informed him "the guy in the white shirt by the blue car has a gun and tried to shoot them." Dkt. 45-2 at 1.[6] Conway observed a man, Loftis, standing near the passenger window of a blue Honda car. *Id.*[7] Conway exited his vehicle and gave

---

[5] Loftis challenges whether a shot was ever fired because he claims you cannot hear it on the 911 call. *See* Dkt. 51 at 5. However, it is undisputed from the 911 call and the logs that Higginbotham reported the suspect was firing shots. Dkt. 45-1 at 4 ("White shirt is firing at RP"); Dkt. 51-1 at 1:50-1:57 ("He's shooting the gun … he's shooting at us!").

[6] Loftis disputes Conway's affidavit wherein he states the first individuals he encountered on 7th Avenue informed him the "guy in the white shirt by the blue car has a gun and tried to shoot them" (Dkt. 45-2 at 1) because this information is in Conway's affidavit and cannot be heard on the dash cam audio. Dkt. 56 at 3. Loftis contends the individuals "did not say that[.]" *Id.* However, a review of the dash cam video reveals while Conway is speaking to the individuals, there is also someone speaking on the radio in Conway's patrol vehicle muffling the conversation between Conway and the individuals. Dkt. 45-5 at 3:23-3:33. To dispute Conway's affidavit, Loftis must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Loftis has failed to carry his burden to dispute this fact. *Compare* Dkts. 45-2 at 1 and Dkts. 45-3 at 15-18 *with* Dkt. 56 at 3.

[7] Loftis "does not dispute that there may have been two black males one in a white shirt and one in a red shirt, which was Plaintiff's son, engaged in an argument with the people down the street."

the subject commands to put his hands up and get on the ground. *Id.* Loftis did not comply with Conway's commands. Loftis admits, "Plaintiff refused to comply and yelled profanities and instead kept his hand down by his sides[.]" Dkt. 51 at 2.

Not only was Loftis not complying with Conway's commands, two other male subjects, one in a red shirt and one in a gray shirt, ignored Conway's commands and walked out of sight. *Id.* At this point, "after multiple commands without compliance and fearing the male subject had a firearm in his person[,] [Conway] deployed a JPX pepper cartridge with [his] left hand at the subject … and it hit him in the shoulder area. [Conway] immediately deployed a second round which hit the subject in the left side of the face. The subject then went to his knees and la[i]d on the ground in the prone position." Dkt. 45-2 at 1-2. After Loftis was on the ground, Conway was able to take Loftis into custody. *Id.* at 2.[8]

Loftis challenges the order of events and whether there was an ongoing threat at the point in time when Conway approached him because the suspect was no longer in Higginbotham's yard. *See* Dkt. 51 at 14-15. The record establishes from the time Higginbotham told the dispatcher the suspect was firing his weapon until Conway had Loftis on the ground a total of 2 minutes and 5

---

Dkt. 51 at 2. Loftis also acknowledges he was standing near a blue car when Conway encountered him. *Id*. However, Loftis disputes that he was wearing a white shirt or that he was the individual in possession of a gun in the neighbor's yard. Dkt. 51 at 3. The court rejects Loftis's contention that he was not wearing a white shirt. *See* Dkt. 51-2. And whether Loftis was the individual with the gun is not the proper inquiry. The proper assessment of the facts is from "the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. Therefore, a reasonable officer could conclude Loftis, a black male in a white shirt very near the vicinity of the reported incident, was the suspect.

[8] Critically, Higginbotham communicated to the 911 dispatcher that the first responding officer, Conway, had the suspect that was firing at her on the ground. Dkt. 51-1 at 3:50-3:55. Further, Loftis was wearing a white t-shirt with brown images on it, which matched Higginbotham's description of the suspect wearing a white shirt. *See* Dkt. 51-2 and 51-8; *see also* Dkt. 51-1 at 3 ("2 black males pointing a gun at people: white shirt"), 4 ("white shirt is firing at RP").

seconds elapsed. Dkt. 51-1 at 1:50–3:55. Therefore, the court disagrees with Loftis's characterization that any threat had dissipated by the time of Conway's arrival.

In all, Conway was facing multiple non-compliant individuals and believed there was an unaccounted firearm involved. Under these circumstances, Conway was entitled to use non-lethal force to maintain order at the scene. *See, e.g., Tucker v. Haney*, No. 14-cv-04-GKF-PJC, 2014 WL 6074053, at *7 (N.D. Okla. Nov. 13, 2014) (unpublished) (holding that the second *Graham* factor weighed in favor of the officer because the plaintiff "aggressively disrupted a situation in which a single officer was responsible for detaining and questioning three individuals," "threatened and cursed at her son[,] and refused the officer's order to back away."). This factor weighs in favor of Conway.

The third *Graham* factor weighs in favor of "'some degree of physical coercion or threat,' when an individual refuses to obey an officer's lawful orders[.]" *Andersen v. DelCore*, 79 F.4th 1153, 1165-66 (10th Cir. 2023) (quoting *Graham*, 490 U.S. 396; *Mecham v. Frazier*, 500 F.3d 1200, 1204-05 (10th Cir. 2007)). Loftis does not dispute that he refused to comply with Conway's directives. Dkt. 51 at 2 ("Plaintiff refused to comply and yelled profanities and instead kept his hand down by his sides[.]"); Dkt. 45-4 at 1. The use of force and the degree of force[9] used was reasonable under the circumstances, and Loftis has not shown that Conway acted unreasonably considering Loftis's actions. The third factor weighs in favor of Conway.

Based on the *Graham* factors analyzed above, the Court concludes Loftis has failed to meet his burden of showing that Conway's actions violated his constitutional rights.

---

[9] Medical attention was summoned for Loftis after Conway deployed the pepper cartridge. Dkt. 45-1 at 8. Loftis refused medical care. *Id.* ("1 PT refusal"). Loftis can also be observed in the back of Officer Christopher Auld's patrol vehicle without apparent injury. *See* Dkt. 45-8.

**B. Whether Conway violated clearly established law**

Even if the Court concluded the facts precluded summary judgment on the excessive force claim, that right was not clearly established. Loftis bears the burden of demonstrating that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "He must point to a Supreme Court or Tenth Circuit opinion—or 'the clearly established weight of authority from other courts'—holding that use of force is excessive in analogous circumstances." *Fields v. City of Tulsa*, Case No. 23-5001, 2023 WL 8643188, at *4 (10th Cir. Dec. 14, 2023) (unpublished) (citing *Kaven*, 765 F.3d at 1183).

Loftis cites three cases: *Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008), *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008) and *Chapman v. Hedderman*, Case No. 20-CV-825-D, 2021 WL 2149322 (W.D. Okla. May 26, 2021).[10] *Buck* and *Fogarty* do not involve the use of force in an analogous circumstance.

In *Fogarty v. Gallegos*, officers dragged the plaintiff-protestor across the street while hyperflexing his wrist, exposing him to tear gas and shooting him with a pepper ball or some other type of projectile. *Fogarty*, 523 F.3d at 1159. The crime at issue was a petty misdemeanor, the least severe crime contemplated by New Mexico law, the Tenth Circuit found "no suggestion that [the plaintiff] posed an immediate threat to the safety of the officers or others," and the plaintiff "was neither actively resisting arrest nor attempting to evade arrest by flight." *Id.* at 1160. In this situation, the Tenth Circuit held "that defendants' use of force violated clearly established law." *Id.* at 1161.

---

[10] The court will not analyze the *Chapman* decision as it is not a Tenth Circuit opinion. *See Chapman*, 2021 WL 2149322.

In *Buck v. City of Albuquerque*, the Tenth Circuit held that the defendants' use of tear gas and pepper ball rounds against protestor-plaintiffs who were not suspected of any severe crime, did not pose a threat to the safety of an officer or others and did not attempt to flee or evade arrest violated clearly established law. *See Buck*, 549 F.3d 1269 at 1290-91.

The facts in the case at bar are inapposite to the facts of *Fogarty* and *Buck*. In *Fogarty* and *Buck*, non-lethal force was used against protestors who were not suspected of severe crimes, did not pose a threat to the safety of an officer and did not attempt to flee or evade arrest. Here, the record demonstrates that Loftis was suspected of a severe crime involving a firearm, he posed a threat to Conway's and other's safety and he refused to comply with Conway's commands. Loftis has failed to demonstrate either of these cases clearly establishes that using non-lethal force against a non-compliant suspect of a severe crime violates the Fourth Amendment. The court, therefore, finds Conway is entitled to qualified immunity for Loftis's § 1983 claim for excessive force in violation of the Fourth Amendment.

In all, Loftis cannot and has not demonstrated Conway violated his constitutional rights, Conway is entitled to qualified immunity, and Conway is entitled to summary judgment on Loftis's Fourth Amendment excessive force claim.

## CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendant Cody Conway's Motion for Summary Judgment (Dkt. 45) is **granted**.

**IT IS FURTHER ORDERED** that this is a final order terminating this action.

**IT IS FURTHER ORDERED** that a separate judgment shall be entered herewith.

**DATED** this 19th day of August, 2026.

Ronald A. White
United States District Judge
Eastern District of Oklahoma